1

2

3

4

5

6

7

8

The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

SEIU HEALTHCARE 1199NW, a labor
organization,

                  Plaintiff,

    v.

PROVIDENCE HEALTH & SERVICES,d/b/a
Providence SoundHomeCare and Hospice,

                  Defendant.

No. 3:19-cv-05628-BHS-TLF

DEFENDANT'S MOTION TO
DISMISS

*Noted for Hearing*:
August 30, 2019

## I.     INTRODUCTION

Providence Health & Services d/b/a Providence SoundHomeCare and Hospice ("Sound") moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) to dismiss the Complaint for failure to state a claim upon which relief may be granted.  This lawsuit arises out of SEIU Healthcare 1199NW's ("the Union") unsuccessful attempt to arbitrate a staffing dispute that the parties expressly agreed to exclude from the grievance process.  Because the parties agreed that the staffing dispute would be determined by Sound in its discretion, the arbitrator found she was without jurisdiction to decide the merits.  Dissatisfied with the arbitrator's refusal to exercise jurisdiction, the Union filed this suit to obtain a second bite at the apple.  This Court should reject that attempt and dismiss the Complaint for the following reasons.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*First*, the applicable collective bargaining agreement ("CBA") makes clear that the parties agreed to resolve staffing disputes internally and, in doing so, the Union waived its right to challenge staffing decisions through the judicial process.  The CBA establishes a comprehensive grievance process designed to resolve any "alleged breach of the terms and conditions of this Agreement." The parties agreed in the CBA and a related Letter of Understanding (the "LOU") that (i) the Union could address staffing concerns through a process involving the Labor-Management Committee, (ii) the Program Director's staffing decisions would be "final," and (iii) staffing decisions "shall not be subject to grievance and/or arbitration."  Those contract provisions make clear that the parties committed to resolving staffing disputes internally through the Labor-Management Committee process and gave the Program Director authority to make "final" decisions.  Established principles of federal labor law require that Courts defer to any method for resolving disputes agreed to by the parties to a collective bargaining agreement.  As such, because the Union agreed in the CBA to address staffing concerns through the Labor-Management Committee process and agreed that the Program Director's staffing decisions would be final, it forfeited its right under Section 301 of the Labor-Management Relations Act to maintain an action to enforce those provisions of the LOU.  Accordingly, this Court lacks subject matter jurisdiction over the Union's claim.

*Second*, as the arbitrator correctly concluded, the parties agreed that the Program Director's staffing decisions would be final and not subject to arbitration.  This determination has not been challenged by the Union.  The Union is estopped from seeking a different remedy here.

*Third,* even if the Union's claim were not barred by the plain terms of the CBA, the Complaint should nonetheless be dismissed because it fails to allege facts that plausibly suggest entitlement to relief.  In support of its claim, the Complaint merely recites, nearly verbatim, provisions of the CBA, along with the unadorned conclusion that Sound "did not make and has not made a good faith effort" to comply with those provisions.  That boilerplate recitation, devoid of factual detail about the staffing decision being challenged or the specific conduct the

MOTION TO DISMISS (3:19-cv-05628-BHS-TLF) - 2
4819-7941-9550v.3 0016924-000563

Union claims was taken in bad faith, falls far short of the plausibility threshold the Union must cross to survive a motion to dismiss.

Accordingly, the Court should grant this motion and dismiss Plaintiff's Complaint with prejudice.

## II.    RELEVANT FACTUAL ALLEGATIONS

### A.    The Parties' CBA and LOU

Sound and the Union entered into the operative CBA in August 2017 covering a bargaining unit that includes, among others, Registered Nurses, Licensed Practical Nurses, Social Workers, Occupational Therapists, and Home Health Aides.[1]  Complaint ("Compl."), ¶¶ 4.1-4.2.  Article 16 of the CBA establishes a detailed grievance procedure for addressing alleged CBA violations.  Compl. Ex. A at 34-36.  That section defines "grievance" to mean "an alleged breach of the terms and conditions of this Agreement."  *Id*. at 34.  The section further provides that "[a] grievance will be submitted subject to the following grievance procedure," which comprises four discrete steps, the final being binding arbitration.  *Id*. at 34-35.  Article 16 specifies that any arbitrator's decision is "final and binding on all parties."  *Id*. at 35.  Taken together, those provisions make clear that the sole avenue for challenging "an alleged breach of the terms and conditions" of the CBA (i.e., a "grievance") is through the grievance and arbitration process.  *See generally id*. at 34-36.

The LOU and Article 5.5 of the CBA expressly address staffing issues.  Compl., Ex. A at 13 and 41.  The LOU provides that Sound "will make a good faith effort to adjust daily patient assignments based on patient care and/or departmental needs and in consideration for time spent: [1] on day of Team Meetings; [2] New Admit (Home Health) – unless there is a designated Admissions Clinician (Hospice); [3] Recertification; [4] Resumption of care (Oasis Home Health – return from the hospital); [5] for miles traveled; [and] [6] evidence based high acuity patients."  *Id*. at 41.

---

[1] As required for purposes of this motion, Sound accepts as true all well-pled factual allegations in the Complaint. *Reese v. BP Expl. (Alaska) Inc*., 643 F.3d 681, 690 (9th Cir. 2011).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Both the CBA and LOU establish a detailed, agreed-upon method for addressing staffing concerns, primarily through the Labor-Management Committee.  Compl., Ex. A at 13 & 41.  The Labor-Management Committee consists of four Sound representatives and four Union representatives, and its purpose is to "foster improved communications between the Employer and the employees covered by the Agreement, to recommend solutions to issues identified by the Committee, and to make recommendations for the improvement of working conditions."  *Id.* at 32. Although"[t]he function of the Committee shall be advisory, by mutual agreement of the parties, the CBA "may be modified to implement solutions to, and the resolution of, issues of mutual concern."  *Id.*

Article 5.5 and the LOU both provide that "[e]mployees who have concerns about staffing or workload are encouraged to address the issues directly with their supervisor."  *Id.*  at 13 & 41.  Article 5.5 states that if staffing concerns "continue[] to occur with regularity, the problem may be referred to the Labor-Management Committee for review and advisory recommendations."  *Id.* at 13.  That process is detailed in the LOU, which states that "any employee(s) who are not satisfied with the supervisor/manager response to the staffing concern may take their concerns to the Labor Management Committee for inclusion on the meeting agenda."  *Id.* at 41.  Next, "[t]he Labor Management Committee shall discuss the concerns" and the Program Director of the relevant department and Human resources will be present during that discussion.  *Id.*  The Labor Management Committee will then "make written advisory recommendations on ways to resolve the issues" and "[r]esponses to the recommendations will be presented to the Labor Management Committee members in writing."  *Id.* at 42.  The parties agreed that all "[f]inal staffing decisions shall be made by the Program Director, in consultation with the Service Line VP."  *Id.* Consistent with the decision to vest absolute authority with the Program Director to make staffing decisions, the parties agreed that "the determination of staffing/caseload/productivity requirements ***shall not be subject to grievance and/or arbitration*** . . ."  *Id.* (Emphasis added).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**B.**     **The Union's Attempt to Use the Grievance Procedure to Challenge Staffing Decisions.**

On or around October 28, 2018, the Union alleges—notwithstanding the language excluding staffing concerns from the grievance process—it "properly and timely filed a grievance" on behalf of certain bargaining unit members alleging that Sound "ha[d] not made a good faith effort to adjust daily patient assignments based on factors described in the [LOU], including but not limited to miles traveled and evidence based high acuity patients."  Compl. ¶ 4.19.  During the step process, Sound denied the grievance on the grounds that the issue was not subject to the grievance process and, in any case, it had not violated the CBA or LOU.  Id. ¶¶ 4.22-4.27.  The Union elected to advance the grievance to arbitration before Arbitrator Shelly Shapiro.  *Id.* ¶ 4.28.

On May 6, 2019, Arbitrator Shapiro issued a ruling dismissing the grievance.  Compl. ¶ 4.29; Banas Decl., ¶ 2, Ex. 1 (Arbitrator's Ruling).[2]  Arbitrator Shapiro's ruling emphasized that the LOU set forth a "detailed, multi-step process for resolving any employee concerns about staffing issues," vested authority with the Program Director to make "[f]inal staffing decisions," and specifically stated that staffing determinations could not be grieved or arbitrated.  Banas Decl., Ex. A at 3.  In rejecting the Union's argument that the CBA authorized the arbitrator to review whether Sound acted in good faith, Arbitrator Shapiro stated that "[g]iven the specificity and clarity of the LOU's stated process for addressing employee staffing concerns, in addition to the explicit exception (which has no parallel in the LOU provisions covering different topics) for staffing issues from the contractual grievance and arbitration process . . . the Union's argument is not persuasive."  *Id.* at 4.  Based on those considerations, Arbitrator Shapiro concluded that the matter was not substantively arbitrable.  *Id.*

---

[2] Although the Union did not attach Arbitrator Shapiro's ruling to the Complaint, it is well-settled that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."  *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (quotation marks, alterations and citations omitted).  Here, Arbitrator Shapiro's ruling is discussed and quoted in the Complaint and relied upon for the Union's allegation that it purportedly "exhausted the grievance process in the parties' CBA."  Compl. ¶ 4.29-30.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### C.    The Union's Lawsuit

On July 10, 2019, the Union filed this lawsuit pursuant to Section 301 of the Labor Management Relations Act, alleging, as it had before Arbitrator Shapiro, that Sound failed in some unspecified way to act in good faith in making staffing decisions.  Compl. ¶¶ 4.12-4.18. Each of the Union's allegations supporting that claim follow the same formula—it alleges, with no factual detail, that Sound "did not make and has not made a good faith effort to adjust daily patient assignments based on" each of the scheduling factors identified in the LOU.  *Id.*  The Union asserts two causes of action: (1) breach of contract under Section 301 of the LMRA; and (2) an action for "attorneys' fees and costs," purportedly pursuant to unspecified "federal common law and statutes."  *Id.* ¶¶ 6.1-7.2.

## III.    ARGUMENT

### A.    The Court Lacks Subject Matter Jurisdiction Over the Union's Section 301 Claim.

#### 1.    Legal Standard for a Motion to Dismiss for Lack of Subject Matter Jurisdiction.

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) addresses the court's subject matter jurisdiction.  The burden of establishing the subject matter jurisdiction rests upon the party asserting jurisdiction.  *Rice v. Providence Regional Medical Center Everett*, 2009 WL 2342449 (W.D. Wash. 2009) (citation omitted).  Failure to state a claim under LMRA § 301(a) is a defect in subject matter jurisdiction.  *See Granite Rock Co. v. Int'l Broth. of Teamsters,* 546 F.3d 1169, 1176 n. 3 (9th Cir. 2008), *rev'd in part on other grounds*, 561 U.S. 287.

#### 2.    The Union's Section 301 Claim Fails as a Matter of Law.

Although Section 301 of the LMRA authorizes suits by labor unions in federal court for alleged violations of CBAs, the LMRA also provides that "[f]inal adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d).  Thus, "whenever the parties have agreed upon a different method for the adjustment of their disputes," their right to seek redress in a "judicial forum is overcome*."*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   *Groves v. Ring Screw Works, Ferndale Fastener Div.*, 498 U.S. 168, 173–74 (1990); *Am. Fed'n*

2   *of State, Cty., & Mun. Employees Council 75 v. Good Shepherd Health Care Sys.*, 2010 WL

3   3746424, at \*3 (D. Or. July 16, 2010), *report and recommendation adopted*, 2010 WL 3746404

4   (D. Or. Sept. 21, 2010) ("It has long been an established precept of federal labor law that the

5   method of dispute resolution agreed to by the parties in their labor agreement takes primacy

6   over civil actions for breach of contract.").

7          Although "final adjustment" ordinarily takes the form of formal arbitration proceedings,

8   it is not so limited in scope.  Indeed, "the Supreme Court has recognized that the word

9   'arbitration' need not appear in the collective bargaining agreement for the means chosen by

10   the parties for settlement of their differences to be given 'full play.'"  *Lackey Elec., Inc. v. Int'l*

11   *Bhd. of Elec. Workers, Local Union No. 226*, 351 F. Supp. 2d 1208, 1212 (D. Kan. 2005)

12   (quoting *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372

13   U.S. 517, 519 (1963) ("[W]e have held that the policy of the Labor Act can be effectuated only

14   if the means chosen by the parties for settlement of their differences under a collective

15   bargaining agreement is given full play.")).  The critical inquiry is whether the parties have

16   chosen an "instrument for the definitive settlement of grievances" under their collective

17   bargaining agreement.  *Riss & Co.*, 372 U.S. at 519; *United Mine Workers of Am., Dist. No. 2 v.*

18   *Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir. 1977) ("It is not arbitration per se that

19   federal policy favors, but rather final adjustment of differences by a means selected by the

20   parties.").  "If the parties agree that a procedure other than arbitration shall provide a conclusive

21   resolution of their differences, federal labor policy encourages that procedure no less than

22   arbitration."  *Barnes & Tucker Co.*, 561 F.2d at 1096; *Hardee v. N. Carolina Allstate Servs.*,

23   Inc., 537 F.2d 1255, 1258 (4th Cir. 1976) ("Where a collective bargaining agreement provides

24   procedures by which disputes are to be resolved, then the decision reached under these

25   procedures is generally final and binding on the parties and will not be disturbed by the

26   courts.").  "When the parties have agreed upon a particular method of dispute resolution, it

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

should generally be presumed to be fair." *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985).

The decision in *Good Shepherd.*, 2010 WL 3746424, at *3 is particularly instructive.  In that case, the Union grieved the termination of one its members on the grounds that the termination lacked just cause through a process established under the CBA, which culminated in a decision by a "Board of Adjustment," or, if deadlocked, by the Hospital's Board of Directors.  The Board of Directors denied the Union's grievance and upheld the termination. The Union then filed suit under Section 301 to enforce the "just cause" provision in the contract.  The Court dismissed the claim for lack of subject matter jurisdiction, explaining that:

> [The] Union executed the CBA which unequivocally provided that Article 10 of the CBA is the exclusive method for resolving disputes and that the grievance procedure is final and binding. The CBA is the complete agreement of the parties and each party had the "unlimited right and opportunity to make demands and proposals ... and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement." The parties agreed to be bound by the grievance procedure in the CBA and no reservation of any right to arbitrate or sue in federal court was included in the contract. The court will not rewrite the contract for the parties to include such a provision.

*Id.* at *5.

Here, as in *Good Shepherd*, Sound and the Union agreed to a process for "definitive[ly] settl[ing]" staffing disputes those issues through the Labor Management Committee process set forth in the LOU.  Compl., Ex. A at 41-42.  The parties agreed that the Program Director's staffing decisions would be "final," *id.*, and specifically excluded staffing disputes from the grievance process, which, under the CBA, is the Union's exclusive avenue for addressing any "alleged breach of the terms and conditions of [the CBA]."  *Id.* at 34.  By agreeing that staffing determinations "shall not be subject to grievance and/or arbitration," and establishing a separate process for addressing staffing decisions that culminated in the Program Director's "final" decision, it is clear that the parties intended for the staffing issues to be resolved internally—not by an outside decision-maker, such as an arbitrator or court.  It is, indeed, inconceivable that

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the parties intended to single out staffing disputes for judicial resolution while resolving all other disputes under the CBA through the grievance and arbitration process.  Those provisions, taken together, demonstrate that the parties intended the Labor Management Committee process and the Program Director's "final" decision to be a procedure for "final adjustment" of disputes over staffing that the Union is bound to follow.

Because the Union agreed to resolve staffing issues in the manner set forth in the LOU, and agreed that the Program Director's decision would be final, it forfeited its right to enforce those provisions of the CBA in a judicial forum.  Accordingly, the Court lacks subject matter jurisdiction over the Union's Section 301 claim and the Complaint must be dismissed.[3]

**B.     The Union Has Failed to State a Plausible Claim for Relief**

**1.     Legal Standard for Motion to Dismiss for Failure to State a Claim.**

Even if the Court had jurisdiction to entertain the Union's claim, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[3] The Union may argue that it can seek review of the Program Director's decision.  Even if that were true, which Sound does not concede here, the Union would need to exhaust the process mandated under the LOU and, even then, could only challenge specific Program Director decisions under an extraordinarily limited standard of review.  *Hardee v. N. Carolina Allstate Servs., Inc.*, 537 F.2d 1255, 1258 (4th Cir. 1976) ("Where a collective bargaining agreement provides procedures by which disputes are to be resolved, then the decision reached under these procedures is generally final and binding on the parties and will not be disturbed by the courts.").

MOTION TO DISMISS (3:19-cv-05628-BHS-TLF) - 9
4819-7941-9550v.3 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Id.* (*citing Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Ultimately, a complaint must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.

### 2.    The Union is Barred from Relitigating Issues Decided by the Arbitrator.

The Union's lawsuit is an attempt to relitigate issues already resolved by Arbitrator Shapiro, which is barred under the doctrine of collateral estoppel. "Issue preclusion, or collateral estoppel, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040–41 (9th Cir. 2017) (quotation marks and citation omitted). The doctrine applies when "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012). "Generally, final arbitral awards are afforded the same preclusive effects as are prior court judgments." *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012). "A district court may consider the affirmative defenses of claim or issue preclusion on a Rule 12(b)(6) motion to dismiss." *See Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1231 (D. Or. 2013).

Here, Arbitrator Shapiro's ruling, which the Union has not sought to vacate or otherwise challenge,[4] squarely addressed the issue at stake here: the process for addressing

---

[4] Indeed, the deadline for challenging Arbitrator Shapiro's May 6, 2019 award expired on August 4, 2019. *See United Ass'n of Plumbers & Steamfitters Local 44 v. Irwin-Yaeger, Inc.*, 2013 WL 3350851, at *5 (E.D. Wash. July 3, 2013) (holding that "[a]n action to vacate an arbitration award under § 301 must be filed within the

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

staffing decisions under the CBA.  Arbitrator Shapiro recognized that the CBA established a "detailed, multi-step" process for addressing and resolving staffing issues, which culminated in a "final" decision by the Program Director.  Banas Decl., Ex. 1 at 3.  Arbitrator Shapiro specifically emphasized the "specificity and clarity of the LOU's stated process for addressing employee staffing concerns" in concluding that she lacked authority to resolve staffing disputes.  *Id*. at 4.  Thus, Arbitrator Shapiro's ruling that she lacked jurisdiction was necessarily based, in part, on her conclusion that, under the CBA, the Union's sole mechanism for addressing staffing concerns is through the Labor-Management Committee process, subject to the Program Director's "final" decision.  The Union sought arbitration over Sound's objection and thereby agreed to present the issue of substantive arbitrability to the Arbitrator.  Thus, there can be no dispute the Union had a full and fair opportunity to litigate the issue in the arbitration.

The Arbitrator interpreted the provisions of the CBA on which the Union's claim relies to conclude that the process set forth in the LOU was the agreed-upon mechanism for addressing staffing issues.  Applying Arbitrator Shapiro's ruling here, the Union cannot directly challenge staffing decisions under Section 301 but must, instead, follow the process set forth in the LOU.  Thus, Arbitrator Shapiro's decision, absent an order vacating that ruling, collaterally estops the Union from seeking a different decision from this Court.

### 3.    The Complaint Fails to State a Plausible Claim for Breach of Contract.

Here, the totality of the Union's allegations in support of its breach of contract claim consist of boilerplate recitations of contract provisions and a conclusory statement that Sound did not comply with those provisions.  The Complaint offers no factual allegations describing the staffing decisions that it claims violated the agreement or Sound's specific actions (or inaction) that it claims amounted to a breach of the agreement.  The allegations amount to nothing more than identification of contract provisions and an unadorned conclusion that Sound

---

applicable limitation period prescribed by the forum state," which, under Washington law, is 90 days) (quotation marks and citations omitted).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

breached those provisions.  That is plainly insufficient to state a plausible claim for breach of contract.  *See, e.g., Junod v. Dream House Mortg. Co.*, 2012 WL 94355, at *6 (C.D. Cal. Jan. 5, 2012) (granting motion to dismiss where allegations in the Complaint "that Defendants breached a certain section of the deed of trust are conclusory devoid of facts supporting such conclusions"); *Tai v. Minka Lighting, Inc.*, 2017 WL 568519, at *4 (D. Ariz. Feb. 13, 2017) (granting motion to dismiss when "[t]he claim alleges, in conclusory fashion, that Defendant has certain obligations under the agreement and is in breach those obligations . . . but fails to allege specific facts in support of the claim."); *Honold v. Deutsche Bank Nat. Tr. Co.*, 2010 WL 5174383, at *3 (D. Haw. Dec. 15, 2010) (a party pleading breach of contract must, at a minimum, allege "when and how Defendants allegedly breached the contract"); *Sports Med Properties, LLC v. Aquib Talib*, 2019 WL 3403372, at *3 (W.D.N.C. July 26, 2019) (granting motion to dismiss where, "[i]n alleging breach of contract, [the claimant] has merely recited provisions from the contract and alleged that [the other party] violated these provisions, without providing any factual basis for these allegations"); *Hampton v. Wells Fargo Bank*, 2012 WL 12903542, at *2 (S.D. Tex. May 18, 2012) (dismissing contract claim where the Complaint failed to, among other things, "explain[] how [Defendant] breached" the contract).

The Union's failure to plead facts sufficient to support a plausible inference that Sound breached the staffing-related provisions of the CBA requires that its Section 301 claim be dismissed.

### 4. The "Cause of Action" for "Attorneys' Fees and Costs" is Not Adequately Pled.

The Union's "Cause of Action" for "Attorneys' Fees and Costs" fares no better.  In support of this claim, the Union alleges the following:

- "The Union has incurred and is incurring attorneys' fees and costs in filing and litigating this suit," Compl. ¶ 4.31; and

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

- "Pursuant to federal common law and statutes, Sound is obligated to pay the Union its reasonable attorneys' fees and costs incurred in bringing this suit," *id.* ¶ 7.2.

To the extent a claim to recover attorneys' fees is properly characterized as a separate "cause of action," the Union has failed to state a plausible claim for relief.  Other than an allegation that it has incurred costs and fees, it has not identified any legal basis for the claim, nor has it alleged facts that would plausibly entitle it to recover such fees.

## IV.   CONCLUSION

For the foregoing reasons, Sound respectfully requests that the Court dismiss with prejudice the Union's Section 301 claim under to Federal Rule of Civil Procedure 12(b)(1) and the remaining claim for attorneys' fees under Federal Rule of Civil Procedure 12(b)(6).  In the alternative, Sound asks the Court to dismiss the entire Complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

DATED this 5th day of August, 2019.

Davis Wright Tremaine LLP
Attorneys for Defendant


By *s/ N. Joseph Wonderly*
Paula L. Lehmann, WSBA #20678
N. Joseph Wonderly, WSBA #51925
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700
E-mail: paulalehmann@dwt.com
         joewonderly@dwt.com

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th[th] day of August 2019, I electronically filed the foregoing Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kristin Kussman, WSBA #30638
Amy Bowles, WSBA # 33541
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Ph:  (206) 623-0900
Fax: (206) 623-1432
Email: kkussmann@qwestoffice.net
        abowles@questoffice.net

DATED this 5th day of August, 2019.


*/s/Mendy Graves*_____

MOTION TO DISMISS (3:19-cv-05628-BHS-TLF) - 14
4819-7941-9550v.3 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax