The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

SEIU HEALTHCARE 1199NW,
a labor organization

                        Plaintiff,

  v.

PROVIDENCE HEALTH & SERVICES,
d/b/a Providence SoundHomeCare and
Hospice.

                   Defendant.

Case No. 3:19-cv-05628-BHS-TLF

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**NOTED FOR:** AUGUST 30, 2019

## I.    INTRODUCTION

SEIU Healthcare 1199NW ("Union" or "Plaintiff" or "SEIU 1199NW") filed this litigation because of Providence SoundHomeCare and Hospice's ("Employer's" or "Defendant's" or "Sound's") breach of its collective bargaining agreement ("CBA") with the Union. Despite its promises in the CBA, the Employer, a provider of home care and hospice services, failed to make good faith efforts to adjust the daily patient assignments, based upon certain agreed-upon factors, of Union-represented employees who provide nursing and other

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 1

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

care to patients who are sick and/or dying. After the Union properly advanced a grievance through the parties' internal grievance process, an arbitrator ruled that she did not have jurisdiction to hear the Union's grievance, given language in the CBA excluding staffing and staffing/caseload/productivity requirements from arbitration. Following this ruling, limited to whether the arbitrator had jurisdiction to hear the Union's grievance, the Union filed this litigation to ensure the Employer complies with the parties' CBA and makes good faith efforts to adjust daily patient assignments for Union-represented employees providing critical care to home health and hospice patients.

Defendant asserts that Plaintiff's Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and (6) for failure to state a claim upon which relief may be granted and lack of subject matter jurisdiction. Defendant's arguments essentially boil down to one: that there is no mechanism to enforce the Employer's CBA breach.

For the following reasons, and as set forth herein, Defendant's motion must be denied. First, this Court has subject matter jurisdiction under Section 301 of the Labor Management Relations Act. The Employer argued and an arbitrator ruled that the dispute at issue here is not covered by the specific grievance procedure in the parties' CBA, a ruling the Union does not now contest. Where a dispute is not covered by a dispute resolution process in a CBA, federal courts have jurisdiction to hear the case under Section 301. Any provision stripping courts of jurisdiction must be clear to be enforced. Despite Defendant's arguments, the Labor-Management Committee ("LMC") "process" in the CBA, which is separate and apart from the grievance procedure, does not prevent Section 301 jurisdiction. Second, the arbitrator's "ruling" does not prevent this Court from hearing the Union's CBA breach claims. The arbitrator's ruling that she did not have jurisdiction to hear the Union's grievance does not

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

collaterally estop this court from deciding the CBA breaches, as her ruling did not reach that issue and involved her jurisdiction as an arbitrator, not whether a federal court has jurisdiction. Finally, Defendant's assertion that Plaintiff's Complaint does not otherwise state a claim for relief fails.

## II.    RELEVANT FACTS

### A.    The Parties' Collective Bargaining Agreement, Including Letter of Understanding

Plaintiff SEIU 1199NW is a labor organization, headquartered in Renton, Washington. First Amended Complaint ("Complaint"), ¶ 3.1.[1] Defendant Sound is a Washington corporation doing business within the State of Washington, with a facility in Olympia, Washington. *Id.*, ¶ 3.2. Sound is a provider of home care and hospice services to people in Mason, Lewis, and Thurston counties in Washington State. *Id.*, ¶ 4.2. Patients of Sound are primarily people who are sick and/or dying. *Id.* Union-represented employees provide mostly in-home nursing, therapy, and other care to these patients. *Id.*

In August 2017, Sound and the Union entered into a CBA, which sets forth the wages, hours, and working conditions for Union-represented employees at Sound, including but not limited to Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), Social Workers, Occupational Therapists, Physical Therapists, Home Health Aides, Physical Therapy Assistants, and Bereavement Services Counselors. Complaint, ¶ 4.1, Ex. A. By its terms, this CBA is effective at 12:01 am on the first day of the first pay period beginning on or after ratification through and including 11:59 pm on August 31, 2020. *Id.* The CBA was ratified in August 2017. *Id.*

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Phone: (206) 623-0900
Fax: (206) 623-1432

The CBA contains a Letter of Understanding ("LOU") that provides:

The Employer will make a good faith effort *to adjust daily patient assignments* based on patient care and/or departmental needs and in consideration for time spent:

- On day of Team Meetings
- New Admit (Home Health) – unless there is a designated Admissions Clinician (Hospice)
- Recertification
- Resumption of care (Oasis Home Health – return from the hospital)
- For miles traveled
- Evidence based on high acuity patients.

Complaint, ¶ 4.11, ¶ 4.1, Ex. A, p. 41  (emphasis added).

The CBA contains a grievance procedure in Article 16 with four steps that culminates in final and binding arbitration. Complaint, ¶ 4.12; ¶ 4.1, Ex. A, p. 35-36. The CBA states at Article 16.3 that "[t]he arbitrator shall have no authority to decide staffing issues." *Id.*, ¶ 4.12. The LOU in the CBA provides that "[t]he determination of staffing/caseload/productivity requirements shall not be subject to grievance and/or arbitration…." *Id.,* ¶ 4.12. Article 5.10 of the CBA states that "[t]he determination of staffing (mix of employees, ratios, numbers) shall not be subject to grievance and arbitration." *Id.*, ¶ 4.1, Ex. As, p. 13.

The parties' CBA at Article 14 establishes a Labor-Management Committee to assist with issues of mutual concern. Complaint, ¶ 4.13. The function of the Committee "shall be advisory." *Id.*, ¶ 4.1, Ex. A, p. 32. Article 5.10 provides that "[i]f the [staffing/workload] problem continues to occur with regularity, the problem may be referred to the Labor-Management Committee for review and *advisory recommendation*." *Id.*, ¶ 4.1, Ex. A, p. 13 (emphasis added). The LOU to the CBA provides that "[t]he Labor Management Committee

---

[1] The Employer has not yet filed an Answer to Plaintiff's Complaint and it is within 21 days after service of the Employer's FRCP 12(b) motion. Therefore, pursuant to FRCP 15(a)(1)(B), Plaintiff may file an Amended

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 4

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

shall discuss [caseload/productivity/staffing] concerns and shall make written *advisory recommendations* on ways to resolve the issues." *Id.*, ¶ 4.1, Ex. A, p. 41-42 (emphasis added).

**B.     The Employer's Violations of the Collective Bargaining Agreement**

Prior to October 28, 2018, and continuing, the Employer required and requires specific numeric daily and weekly caseload/visit expectations for Union-represented Sound employees. Complaint, ¶ 4.14. These caseload/visit expectations are reflected in and result in the daily patient assignments made by the Employer to Union-represented employees. *Id.* Such employees are expected to achieve these daily and weekly caseload/visit expectations, and their productivity is evaluated on whether they achieve these daily and weekly caseload/visit expectations, as reflected in their daily and weekly patient assignments. *Id.*

Prior to October 28, 2018, and continuing, the Employer has not made good faith efforts to adjust daily patient assignments of Union-represented employees, based upon factors set forth in the LOU. Complaint, ¶ 4.15-4.19. Specifically, during the term of the parties' CBA, the Employer has not adjusted daily and weekly caseload/visit expectations, and the attendant daily patient assignments, for Union-represented employees for time spent on recertification or with evidence-based high acuity patients. *Id.,* ¶ 4.16, ¶ 4.19. These patients, including but not limited to patients needing wound care, require more of an employee's time to provide appropriate care. *Id.,* ¶ 4.19. The Employer has also not consistently adjusted daily and weekly caseload/visit expectations for all Union-represented employees, which result in daily patient assignments, in consideration for time spent on new admits (for Home Health), unless there was or is a designated Admission Clinician (for Hospice). *Id.*, ¶ 4.15. In addition, the Employer

Complaint without leave of court.

OPPOSITION TO MOTION TO DISMISS                         Douglas Drachler McKee & Gilbrough, LLP
(No. 3:19-cv-05628-BHS-TLF) - 5                         1904 Third Avenue, Suite 1030
                                                        Seattle, WA  98101
                                                        Phone: (206) 623-0900
                                                        Fax: (206) 623-1432

has not consistently adjusted daily and weekly caseload/visit expectations for all Union-represented classifications, which result in daily patient assignments, in consideration for time spent on resumption of care for Oasis Home Health – return from the hospital. *Id.*, ¶ 4.17. Finally, the Employer has not consistently adjusted daily and weekly caseload/visit expectations for all Union-represented classifications, which result in daily patient assignments, to account for miles travelled. *Id.,* ¶ 4.18.

**C.     The Union's Grievance**

On or about October 28, 2018, the Union properly and timely filed a grievance on behalf of all Sound bargaining unit members, naming grievants Cheryl Harper (LPN Clinical Coordinator), Toni Tabor (RN), Veronica Villanueva (Volunteer Coordinator), and Barb Graisy-Adams (Bereavement Counselor). Complaint, ¶ 4.20. The grievance alleges a violation of the parties' CBA, including but not limited to the LOU.  *Id.* The grievance alleges that Sound "has not made a good faith effort to adjust daily patient assignments based on factors described in the Letter of Understanding, including but not limited to miles traveled and evidence based high acuity patients." *Id.* As a result of the Employer's CBA breach, Union-represented employees at Sound have been harmed, including but not limited to by being assigned daily patient assignments that are higher than what they would be assigned if the Employer followed the LOU in the CBA. *Id.*, ¶ 4.22.

On or about December 10, 2018, the Employer issued a written Step One grievance response denying the grievance and stating that "[t]his issue is not subject to the grievance process. In addition, it does not violate the contract." Complaint, ¶ 4.23. The Union timely advanced the grievance to Step Two of the grievance process in the CBA.  *Id.*, ¶ 4.24. The parties held a Step Two grievance meeting on or about December 17, 2018. *Id.* On or about

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

January 4, 2019 the Employer issued a Step Two grievance response, denying the grievance and stating "[t]here is no contract violation here." *Id.*, ¶ 4.25. The Union timely advanced the grievance to Step Three of the grievance process in the CBA. *Id.*, ¶ 4.26. The parties held a Step Three grievance meeting on or about January 29, 2019. *Id.* The Union timely advanced the grievance to arbitration on February 9, 2019. *Id.*, ¶ 4.27. Arbitration is the final step of the grievance process in the parties' CBA. *Id.* On or about February 11, 2019, the Employer issued a Step Three grievance response, denying the grievance and stating "we are in compliance with both the language and the spirit of the contract and letter of agreement." *Id.*, ¶ 4.28. The parties selected Arbitrator Shelly C. Shapiro to arbitrate the grievance pursuant to the procedure in the CBA. On May 6, 2019, Arbitrator Shapiro issued a ruling on substantive arbitrability, stating "Sound's position that the parties did not agree to submit the issue underlying this grievance to arbitration is sustained." *Id.,* ¶ 4.30. She further stated that "Sound['s] request that a hearing not be scheduled here, based on its position that arbitrators do not have subject matter jurisdiction to do so, is granted." *Id.* While not required to, the Union exhausted the grievance process in the parties' CBA. *Id.*, ¶ 4.31.

## III.   ARGUMENT

### A.   Standard for Rule 12(b) Motions to Dismiss

In deciding a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b), a court must assume the truth of all factual allegations and all reasonable inferences to be drawn from the material allegations in the complaint. *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009). All factual allegations in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001); *Walleri v. Fed. Home Loan Bank of Seattle*, 83

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

F.3d 1575, 1580 (9th Cir. 1996). A motion to dismiss under FRCP 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2011); *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "A claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.,* citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957); *Cahill v. Liberty Mut. Ins., Co.,* 80 F.3d 336, 338 (9th Cir. 1996). While the Plaintiff will ultimately prevail here, the issue in a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to provide additional evidence in support of their claims. *Diaz v. Int'l Longshoremen's and Warehousemen's Union,* Hamilton, 474 F.3d 1202, 1205 (9th Cir. 2007).

**B.**     **This Court has Jurisdiction Over Plaintiff's Section 301 Claims.**

Section 301 of the Labor Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 USC §185(a). This statute "expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2nd 972 (1956). The U.S. Supreme Court has emphasized "the strong federal policy favoring judicial enforcement of collective-bargaining agreements" through Section 301 suits. *Groves v. Ring Screw Works, Ferndale Fastener Div.,* 498 U.S. 168, 172-73, 111 S.Ct. 498, 112 L.Ed. 2d 508 (1990) (emphasis added), citing *Hines v. Anchor Motor Freight, Inc.*,

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).[2] "Section 301 is to be given a broad interpretation." *Painting and Decorating Contractor's Ass'n v. Painters and Decorators Joint Committee of the East Bay Counties,* 707 F.2d 1067, 1071 (9th Cir. 1983), citing *Smith v. Evening News Association*, 371 U.S. 195, 199, 9 L. Ed. 2d 246, 83 S. Ct. 267 (1962). Without "plain language" forbidding "any judicial participation in the resolution of disputes," courts presume access to federal courts to enforce a CBA. *Groves,* 498 U.S. at 175-6 (citation and internal quotations omitted). In *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.,* the court found subject matter jurisdiction under Section 301, reasoning that "a contractual agreement to preclude judicial participation in the resolution of important labor-management disputes *must be clear in order to be enforced*" and the parties' agreement did not "clearly preclude[] judicial resolution of disputes." 230 F.3d 569, 575 (2nd Cir. 2000) (emphasis added, citation omitted); *see also Groves,* 498 U.S. at 176 (adopting reasoning of Seventh Circuit that "an agreement to forbid any judicial participation in the resolution of important disputes would have to be written much more clearly than this").

In determining whether a district court has jurisdiction over a Section 301 action, the "question presented" is whether the dispute "falls within the CBA's arbitration clause." *Inlandboatmens Union of the Pac. v. Dutra Group,* 279 F.3d 1075, 1079 (9th Cir. 2002);[3] *see also HC Lawton, Jr., Inc. v Truck Drivers, Chauffeurs and Helpers Local Union No 384,* 755

---

[2] The Employer cites *Groves* for the proposition that "'whenever the parties have agreed upon a different method for the adjustment of their disputes," their right to seek redress in a "judicial forum is overcome." Motion, 6-7. While this is not an incorrect citation to *Groves,* is misses that court's finding that a judicial remedy was available to the union under Section 301, as is also the case here. 498 U.S. at 176.

[3] In finding the district court lacked subject matter jurisdiction, the *Dutra* court relied not on whether the CBA's grievance procedure covered the dispute at issue but on the union's failure to exhaust non-judicial remedies. *Id.* at 1080, fn 6, 1084.

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 9

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Phone: (206) 623-0900
Fax: (206) 623-1432

F.2d 324, 328 (3rd Cir. 1985) ("If [the parties' dispute] is not arbitrable, the parties should return to the district court to adjudicate the merits of their dispute."). While there is a "presumption of arbitrability" in labor law [*see, e.g., AT&T Technologies v. Communic. Workers of America,* 475 US 643, 650, 106 S.Ct. 1415, 98 L.Ed.2nd 648 (1986)],[4] the presumption is balanced by the concept that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [they] have not agreed to submit." *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1343, 4 L.Ed 1424 (1960).

Here, the dispute is whether the Employer made good faith efforts to adjust daily patient assignments for Union-represented employees who provide home care and hospice services, based upon patient care and/or departmental needs and in consideration for time spent on six types of activities. The Union filed a grievance and advanced it through the internal grievance process, culminating in a ruling on "[s]ubstantive arbitrability," from an arbitrator who found "the parties did not agree to submit the issue underlying the grievance *to arbitration*." Declaration of Connie Banas ("Banas Dec."), Ex. 1, p. 1 (emphasis added). Prior to the ruling, the Employer asserted that "the CBA did not provide the prerequisite subject matter jurisdiction to arbitrators," a position the arbitrator accepted. *Id.*

The Employer apparently now argues that both the CBA provisions removing staffing and staffing/caseload/productivity requirements, as well as the LOU provisions at p. 41-42, prevent subject matter jurisdiction here. As to the former, there is now no dispute that the CBA

---

[4] The Employer's citation to 29 USC §173(d) [Motion, 6] references a section on the duties of the Federal Mediation and Conciliation Service. 29 USC §172(a); 29 USC §173. The quoted language is in the section entitled "Use of concilation and mediation services as last resort" and is not made in the context of Section 301 suits to enforce collective bargaining agreements between a labor organization and an employer.

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 10

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Phone: (206) 623-0900
Fax: (206) 623-1432

1   violation at issue – the Employer's failure to make good faith efforts to adjust daily patient

2   assignments – is not subject to the grievance arbitration process set forth in Article 16 of the

3   CBA. Thus, this cannot provide a basis for finding no subject matter jurisdiction here and in

4   fact supports subject matter jurisdiction of federal courts over this CBA violation. The

5   remaining question is whether the language in the LOU at p. 41-42 of the CBA precludes

6   subject matter jurisdiction. The Employer cites no direct authority for the proposition that

7   where the parties have a clear grievance procedure, and where a dispute is excluded from that

8   procedure, courts lack Section 301 jurisdiction because the CBA contains another averred

9   "procedure" for such disputes, separate from and in addition to the grievance procedure.

10  Nonetheless, the Employer claims that the parties intended for the non-grievance procedure,

11  "advisory" LMC recommendations and "final" Employer staffing decision to constitute the

12  Union's assent to a "final adjustment" process for staffing disputes that requires denying

13  subject matter jurisdiction here. That is not the case.

14
        The parties have not agreed to strip federal courts of subject matter jurisdiction to hear

15
16  Section 301 suits over the Employer's lack of good faith efforts to adjust daily patient

17  assignments. No explicit language in the CBA precludes judicial participation in this dispute,

18  and the vague language cited by the Employer does not provide any indication, let alone a clear

19
20  indication as is required, that the parties intended the LOU to constitute a separate grievance

21  process for "final adjustment" of staffing issues.

22      Beyond two federal district court cases from districts in other states (discussed below)

23  and *Groves* (in which the court found Section 301 jurisdiction over a breach of contract suit),

24  the Employer relies solely on cases in other contexts. For example, in *General Drivers, W & H*

25  *v. Riss & Co.*, the Supreme Court reversed a district court's dismissal of a suit to enforce an

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 11

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

award of a joint panel (not an arbitrator) pursuant to the *grievance* process in a CBA, but did not decide whether the award on the merits of the union's grievance was final and binding. 372 U.S. 517, 518, 520, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). In *United Mine Workers v. Barnes & Tucker Co.,* the Third Circuit considered whether it should specifically enforce *grievance* settlement agreements between a union and employer, but found such agreements should be resolved by the grievance procedure in the parties' CBA. 561 F.2d 1093, 1099 (3rd Cir. 1977). *Hardee v. North Carolina Allstate Services, Inc.* involved whether an arbitration award pursuant to a grievance process under a collective bargaining agreement barred a jury from finding for an employee on his wrongful discharge claim. 537 F.2d 1255, 1258-59 (4th Cir. 1976).[5] And *Sheet Metal Workers Int'l Assoc. Local Union #420 v. Kinney Air Cond. Co.* confirmed a "Local Joint Adjustment Board" award on the merits of a grievance, where this was the final step of the two-stage process for *grievance* resolution in the parties' CBA. 537 F.2d 1255, 743-44 (4th Cir. 1976). These cases involved a grievance filed through a specific process; none involved a purported "process" outside the grievance procedure in the parties' CBA (which is what the Employer claims prevents federal court jurisdiction here).

*American Federation of State v. Good Shepherd Health Care Sys.,*[6] cited by the Employer [Motion, 7, 8] does not support the Employer's contentions. There, the parties' CBA included a final, binding, and exclusive grievance procedure for disputes over alleged CBA violations. *Id.* at *5-6, fn 2. The final step of that four-step grievance procedure was a two-member Board of Adjustment, with a union representative and an employer representative. *Id.*

---

[5] The Union is not now seeking review of any decision of the Program Director, so *Hardee* does not apply, as the Employer claims. Motion, 9, fn 3.

[6] 2010 U.S. Dist LEXIS 10019 (D.Or. 2010), *report and recommendation adopted,* 2010 U.S. Dist. LEXIS 100122 (D.Or 2010). This case has not been cited in any published decisions.

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 12

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Phone: (206) 623-0900
Fax: (206) 623-1432

at *6. If the Board of Adjustment was unable to reach a decision, the union could pursue the matter to a "final and binding decision by the Employer's Board of Directors." *Id.* There was no dispute that the grievance procedure in the CBA covered the just cause grievance at issue. *Id.* Instead, there the union claimed that because the last step of the grievance procedure was not arbitration, a federal court had Section 301 jurisdiction. *Id.* at *12-15.

Here, unlike *Good Shepherd,* the Employer has consistently argued, and Arbitrator Shapiro held, that the dispute is *not* subject to the parties' grievance procedure, given its exclusion from that procedure in at least three places in the CBA. The purported "LMC" process which the Employer claims is set forth in the LOU is *not* a grievance procedure. In *Good Shepherd,* federal court jurisdiction did not fail because the court found that a provision in the CBA outside the grievance procedure governed the dispute at issue, but because the dispute was clearly covered by a final, binding, and exclusive *grievance* procedure, which happened to not include arbitration.[7]

*Lackey Elec., Inc. v. IBEW, Local Union No. 226* similarly does not prevent Section 301 jurisdiction here. 351 F.Supp. 2d 1208 (D.C.Kan. 2005). There, the parties had a three-step process for "resolving 'all grievances or questions in dispute.'" *Id.* at 1210. The second step was before a Labor-Management Committee and if the Committee failed to agree or adjust the matter, the grievance would go to the Council on Industrial Relations for the Electrical Contracting Industry, whose decisions were "final and binding." *Id*. There, the Labor-

---

[7] The Employer states that "as in *Good Shepherd,* Sound and the Union agreed to a process for 'definitive[ly] settl[ing]' staffing disputes those issues through the [LMC] process set forth in the LOU. Motion, 8. However, nothing in the parties' CBA or LOU includes the terms "definitively settling" or some variation thereof. There is no use in the CBA, including LOU, of "definitive," and the only use of "settl[]" is in step four of the grievance procedure. Complaint, ¶ 4.1, Ex. A, p. 35.

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 13

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Phone: (206) 623-0900
Fax: (206) 623-1432

Management Committee determined the grievance at issue – undisputedly subject to the grievance procedure – was untimely. *Id.* at 1202. The union then filed suit over the dispute under Section 301. *Id.* The court found the committee's decision prevented further proceedings on the union's claims. *Id.* The court noted precedent that "so long as the parties have chosen an 'instrument for the definitive settlement of *grievances'* under their [CBA], an award stemming from that instrument is enforceable under section 301 of the Labor Management Relations Act and the courts are not permitted to reweigh the *merits* of the grievance." *Id.* at 1212 (emphasis added). The court noted that only when the Committee fails to agree (which was not the case there) does the matter get referred to the final grievance step. *Id.* at 1213.

Unlike *Lackey,* where there was a clear grievance procedure (of which a labor management committee was a part) that the parties agreed covered the dispute at issue, here, there is no longer a question that the particular dispute at issue is not covered by the CBA's grievance procedure. Additionally, here there is no decision by an arbitrator on anything that could be construed as the merits of the Union's grievance; the arbitrator in her ruling only considered whether she had jurisdiction to hear any aspect of the Union's claims; she found she did not. She did not reach any procedural issue, including timeliness/statute of limitations issues.

Thus, the LOU process does not provide a separate "final adjustment" of the Employer's lack of good faith efforts to adjust daily patient assignments. Even if it did, the only arguable authority provided to the Employer in the LOU is that over "staffing decisions." The parties in the LOU exempted from the grievance and/or arbitration procedure staffing/caseload/productivity requirements, but in the prior sentence regarding Program Director authority, only "staffing decisions" (not caseload or productivity requirements) are

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 14

Douglas Drachler McKee & Gilbourg, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

included. The parties clearly knew to use the terms "caseload" and "productivity" in the sentence on the application of the grievance and/or arbitration process in the CBA and did not use those terms in the prior sentence. The LOU provision violated by the Employer, while in a section entitled "Staffing," does not address staffing levels, but how daily patient assignments are made. This falls much closer to caseloads and/or productivity than staffing. If contract language is ambiguous and susceptible to differing, reasonable interpretations, interpretation becomes a question for the trier of fact. *Bourne v. Walt Disney Co.,* 68 F.3d 621, 629 (2nd Cir. 1995). Thus, dismissal must be additionally denied because the dispute is not suited for disposition on such a motion, where all facts are viewed in a light favorable to the non-moving party.[8]

## C.    The Doctrine of Collateral Estoppel Does Not Support Dismissal.

The Defendant claims that "[t]he Union's lawsuit is an attempt to relitigate issues already resolved by Arbitrator Shapiro, which is barred under the doctrine of collateral estoppel." Motion, 10. The Employer claims that the issue in this case is "staffing decisions under the CBA." These assertions mischaracterize the nature of the Union's lawsuit: it does not seek to have this Court decide whether the Employer's failure to make good faith efforts to adjust patient assignments is subject to the parties' dispute resolution process in the CBA, which was the subject of Arbitrator Shapiro's ruling. Instead, the Union asks this Court to determine whether the Employer breached the parties' CBA. Further, even if collateral

---

[8] Further, to read the language of the LOU in such a way as to find that the Union's only recourse for staffing/caseload/productivity disputes is a non-binding "advisory" recommendation from the Labor Management Committee followed by a unilateral decision of an Employer representative would be to render the remainder of the LOU provisions on staffing superfluous, which conflicts with a basic tenet of CBA interpretation. *See Aeronautical Indust.,* 230 F.3d at 576.

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 15

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

estoppel applies on the issue Arbitrator Shapiro decided (which is not an appropriate approach here), she made no ruling on the jurisdiction of federal courts to hear this dispute.

The doctrine of issue preclusion, or collateral estoppel, applies when "(1) the issue at stake was *identical* in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was decided on the merits." *Howard v. City of Coos Bay,* 871 F.3d 1032, 1040-41 (9th Cir. 2017) (emphasis added and citations omitted).

Collateral estoppel does not apply here. First, the issue before Arbitrator Shelley Shapiro is different that the issue in this proceeding. The limited issue presented to Arbitrator Shapiro was the substantive arbitrability of the Union's grievance: whether she had jurisdiction to hear the grievance at all, given the CBA provisions on whether the dispute at issue is subject to the specific grievance and arbitration process. The issue in this litigation is whether the Employer breached the LOU in the parties' CBA by failing to make a good faith effort to adjust daily patient assignments. Arbitrator Shapiro recognized that this was the issue of the grievance. Banas Dec., Ex. 1, p. 3. Thus, the issues at stake in each proceeding are not "identical" as required for issue preclusion, but instead are different. Second, the issue in this proceeding, the Employer's CBA breach, was not actually "litigated" related to Arbitrator Shapiro's ruling. Instead, Arbitrator Shapiro never reached the merits of the underlying grievance but ruled that the grievance was not substantively arbitrable based upon three provisions in the parties' CBA. Third, there was no opportunity to litigate the issue here: whether the Employer breached the parties' CBA. The arbitrator's decision was limited to reviewing whether she determined she had jurisdiction to issue an Opinion and Award on the merits at all. Finally, Arbitrator Shapiro never decided the Employer's CBA breach on the merits.

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Even if the "issue at stake here" [Motion, 10] was only "the process for addressing staffing decisions under the CBA," as contended by the Employer, Arbitrator Shapiro did not decide that issue; she merely decided that she would not schedule a hearing [Banas Dec., Ex 1, p. 3] and that the parties did not agree to submit the issue of the grievance to *arbitration* [*Id.*, p. 1]. She did not make any determination about the jurisdiction of federal courts to hear the dispute or decide whether the LMC "process" the Employer asserts is a "final determination" prevents federal court jurisdiction. (While Arbitrator Shapiro did discuss the LMC "process," it is a leap to say that her ruling was "necessarily based, in part" on any conclusion regarding the LMC, as the Employer contends. Motion, 11.[9]) Thus, even under the Employer's framing of the issue, the collateral estoppel factors are not satisfied: the issues are not identical, and thus the issue of federal court jurisdiction has not been fully and fairly litigated and decided on the merits.[10]

The Union was not required to file an action to vacate Arbitrator Shapiro's "ruling" on "[s]ubstantive arbitrability."[11] Banas Dec., Ex. 1. Arbitrator Shapiro's "ruling" does not constitute an "award." Pursuant to the parties' collective bargaining agreement, an "award" (not a "ruling") first requires a hearing, which did not occur here. Complaint, ¶ 4.1, Ex. A, p. 36; Banas Dec., Ex. 1, p. 1. Defendant cites no caselaw, and Plaintiff has found none, requiring

---

[9] The Employer also incorrectly states [Motion, 1] that the arbitrator found she did not have jurisdiction to decide the merits "[b]ecause the parties agreed that the staffing dispute would be determined by Sound in its discretion." This is not an accurate characterization of the arbitrator's reasoning. Banas Dec., Ex. 1.

[10] While not argued by the Employer, *Lackey* does not support collateral estoppel here. As previously noted, a Labor-Management Committee's decision was part of an explicit grievance procedure in a CBA. And, in *Lackey*, the decision on timeliness was a decision on the merits, which is different from a ruling on substantive arbitrability. *See* footnote 11.

[11] Substantive arbitrability involves whether an arbitrator has jurisdiction to hear a dispute. *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 471 (2002). Procedural arbitrability, including procedural issues such as timeliness, is for an arbitrator. *Southwest Reg. Council of Carpenters v. Drywall Dynamics, Inc.,* 823 F.3d 524, 531 (9th Cir. 2016).

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 17

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

a party to first file a suit to vacate ruling of an arbitrator on substantive arbitrability as a prerequisite to filing a federal suit for breach of contract. This is likely because, even if such ruling were subject to a suit to vacate (which the Union disputes), courts decline to review the merits of arbitration awards, rendering them unenforceable when the award does not "[draw] its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Further, had the Union not advanced the grievance through the internal grievance procedure and sought an arbitration hearing, it may well have faced an argument (though meritless) that the Union did not exhaust the internal grievance procedure in the CBA. *See, e.g, Dutra,* 279 F.3d at 1083. And exhaustion relates to *non-judicial*, not judicial, remedies. *Id.*

**D.    The Union's Complaint States a Claim for Breach of Contract and Attorneys' Fees.**

Despite that the grievance was advanced through the parties' internal grievance procedure in the CBA, with meetings at each step, the Employer somehow claims it does not have notice of its CBA violations to allow it to defend itself. Motion, 9. FRCP 8(a)(2) provides that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbol,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 869 (2009).  While the original Complaint contained adequate facts, the Union filed an Amended Complaint on August 20, 2019, which includes additional facts. Additionally, while attorneys' fees and costs in the original Complaint were adequately pled, Plaintiff has amended the Complaint on that issue. And, in any event, the remedy in such circumstances is to allow a plaintiff to amend the complaint. *Iqbol,* 556 U.S. at 665.

## IV.    CONCLUSION

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432

1

For the foregoing reasons, the Union respectfully requests that this Court deny

2

Defendant's motion to dismiss with prejudice.

3

DATED this 26th day of August, 2019.

4

DOUGLAS DRACHLER MCKEE & GILBROUGH LLP

5

/s/Kristen Kussmann

6

Kristen Kussmann, WSBA #30638
Amy Bowles, WSBA # 33541

7

1904 Third Ave., Ste. 1030
Seattle, WA  98101

8

Phone: (206) 623-0900
Fax: (206) 623-1432

9

kristenk@ddmglaw.com
amyb@ddmblaw.com

10

*Attorneys for Plaintiff SEIU 1199NW*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## **CERTIFICATE OF SERVICE**

2
        I certify that on August 26, 2019 I am electronically filing the foregoing with the Clerk

3
of Court using the CM/ECF system, which I understand sends notification to all counsel of

4
record. I am also emailing the foregoing to:

5
        Paula Lehmann
6        paulalehmann@dwt.com

7        Joe Wonderly
        joewonderly@dwt.com
8

9        Dated this 26th day of August, 2019.

10
                                /s/ Charlotte Clifton
11                               Charlotte Clifton

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OPPOSITION TO MOTION TO DISMISS
(No. 3:19-cv-05628-BHS-TLF) - 20

Douglas Drachler McKee & Gilbrough, LLP
1904 Third Avenue, Suite 1030
Seattle, WA  98101
Phone: (206) 623-0900
Fax: (206) 623-1432