The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEIU HEALTHCARE 1199NW, a labor organization,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>PROVIDENCE HEALTH SERVICES, d/b/a Providence SoundHomeCare and Hospice,<br><br>　　　　　　　Defendant. | No. 3:19-cv-05628-BHS-TLF<br><br>REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS |

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF)
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### I. INTRODUCTION

SEIU Healthcare 1199NW (the "Union") bargained for—and agreed to—a process for resolving staffing-related disputes that culminates in a "final" determination by Providence SoundHomeCare and Hospice's ("Sound") Program Director.  The Union, now apparently experiencing buyer's remorse, is seeking to sidestep that agreed-upon process by litigating Sound's routine staffing decisions in federal court.  Doing so is contrary to established labor principles, undermines the collective bargaining process, and ignores the Union's agreement to resolve disputes through the method specified in the parties' collective bargaining agreement (the "CBA") and Letter of Understanding (the "LOU").  The Union's arguments to the contrary are unavailing for the following reasons.

*First*, the Union dedicates much of its brief to arguing that the well-established federal preference for private dispute resolution of labor disputes only applies if the parties refer to the method as a "grievance" procedure.  Not so.  Federal law makes clear that the courts must defer to any method selected by the parties for resolving differences, regardless of whether that process involves arbitration or is called a "grievance" procedure.  What matters is whether the parties agreed to a method for reaching final resolution of the dispute at issue.  The parties have done so here in clear and unequivocal terms.  The CBA allows the Union to present staffing concerns to the Labor-Management Committee ("LMC"), which must discuss the concerns— with the Program Director present—and make recommendations for resolution.  The parties agreed that the Program Director would make the "final" decision concerning any such dispute.  As such, the parties have agreed to a method for resolving the dispute the Union seeks to litigate here.

*Second*, the Union's attempt to minimize the significance of Arbitrator Shapiro's ruling misses the mark.  The Union, by bringing the grievance and requesting arbitration, consented to Arbitrator Shapiro's ruling on substantive arbitrability.  In reaching her decision that the dispute was not substantively arbitrable because it was excluded from the CBA's general grievance procedure, Arbitrator Shapiro concluded that the Union's staffing complaints—the

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF) - 1
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

same complaints raised here—*were* subject to the LMC process and Program Director's "final" decision as set forth in the LOU. From that decision, it inexorably follows that the appropriate mechanism for the Union's challenge to Sound's staffing-related decisions is through the LMC process, with the Program Director possessing "final" authority to resolve the dispute. The Union cannot use this proceeding to collaterally attack Arbitrator Shapiro's ruling.

It is inconceivable that, as the Union suggests, the parties intended to specifically carve out staffing-related disputes from the general grievance and arbitration procedure so that those particular issues could be litigated in federal court. Instead, the parties established a separate method for final resolution of staffing-related disputes that provided a mechanism for employees and the Union to raise staffing concerns but also avoided the risk that third-party decision-makers—whether judges or arbitrators—would become mired in evaluating the appropriateness of day-to-day staffing decisions.

In short, the parties agreed to a process for final resolution of staffing-related issues. Fundamental federal labor law principles require that the parties agreed upon process be utilized. Staffing related issues are must be resolved through that process—not in court.

For that reason, the Court should grant this motion and dismiss the Union's First Amended Complaint.[1]

## II.   ARGUMENT

### A.   The LOU's Process for Resolving Staffing-Related Disputes is an Agreed-Upon Method of Final Adjustment Applicable to the Union's Claims in this Case.

The Union makes three principal arguments for why it is not required to submit to the procedure for resolving staffing-related disputes that it agreed to as part of the LOU. Each argument fails.

---

[1] Sound is not challenging the sufficiency of the allegations in the Union's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), though Sound disputes the truth of the allegations and maintains that the First Amended Complaint should be dismissed for the reasons stated in its motion and this reply.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF) - 2
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*First*, the Union seems to argue that, because the dispute at issue here is excluded from the CBA's general grievance procedure, the separate dispute resolution procedure in the LOU specifically applicable to the dispute cannot be a method of final adjustment of staffing disputes. Dkt. 19 at 11:6-10. The Union cites no authority for its assertion that a CBA cannot have separate methods for resolving different types of disputes where both are subject to the established preference for private methods of resolving disputes under a collective bargaining agreement. Indeed, such a rule would undermine the established principal that "final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement." 29 U.S.C. § 173(d).[2] Whether the parties select a single procedure that is designed to resolve all disputes, or agree to separate methods for resolving specific types of procedures, federal policy favoring agreed-upon methods of dispute resolution "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963); *Graphic Communications Intern. Union Local 735-S v. North Am. Directory Corp.*, 98 F.3d 97, 101 n.5 (3d Cir. 1996) (describing the court's "profoundly solicitous attitude toward the contract between the parties to present grievances to an agreed-upon dispute resolution forum," regardless of whether that forum involved "a specific type of arbitrable body"). Simply

---

[2] The Union takes issue with Sound's citation to 29 U.S.C. § 173(d), arguing that that statutory provision "is not made in the context of Section 301 suits to enforce collective bargaining agreements . . . ." Dkt. 19 at 10 n.4. In making that argument, the Union ignores that countless courts have relied on that provision as the principal expression of Congressional policy favoring private dispute resolution over Section 301 litigation. *See, e.g., Groves v. Ring Screw Works, Ferndale Fastener Div.,* 498 U.S. 168, 173–74 & n.2 (1990) (in a case brought under Section 301, citing 29 U.S.C. § 173(d) for the proposition that "a presumption favoring access to a judicial forum is overcome whenever the parties have agreed upon a different method for the adjustment of their disputes"); *Hines v. Anchor Motor Freight, Inc*., 424 U.S. 554, 562 (1976) (relying on 29 U.S.C. § 173(d) as a statement of congressional policy applicable to Section 301 suits); *Bhd. of Locomotive Firemen & Enginemen, Lodge 844 v. Kennecott Copper Corp. (Utah Copper Div.)*, 338 F.2d 224, 226 (10th Cir. 1964) (affirming dismissal of Section 301 suit, stating that "[t]he preferred method for settling disputes was declared by Congress" in 29 U.S.C. § 173(d)); *Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO v. Nolde Bros*., 530 F.2d 548, 550 (4th Cir. 1975) (relying on 29 U.S.C. § 173(d) in dismissing a claim under Section 301 because the claim was subject to arbitration under the collective bargaining agreement). Thus, the Union's suggestion that 29 U.S.C. § 173(d) is somehow inapplicable in the context of Section 301 litigation is meritless.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF) - 3
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

because the parties agreed to resolve *other* types of disputes through a *different* process does not mean that the agreed-upon method for resolving staffing-related disputes is somehow entitled to less deference. And the fact that the LOU does not use the phrase "grievance process" or "arbitration" is irrelevant. The LOU reflects a process for "final" resolution of staffing disputes—the absence of the words "grievance" or "arbitration" from that process is of no moment. *See United Steelworkers of Am., AFL-CIO-CLC v. Lukens Steel Co., Div. of Lukens*, 969 F.2d 1468, 1474 (3d Cir. 1992) ("It is not arbitration per se that federal policy favors, but *rather final adjustment of differences by a means selected by the parties*.") (quotation omitted; emphasis added).

*Second*, the Union argues that the process set forth in the LOU is too "vague" to establish that the "parties intended the LOU to constitute a separate grievance process for 'final adjustment' of staffing issues." Dkt. 19 at 11:17-21. Not so. The process itself is entirely clear. Employee staffing concerns are first communicated to the LMC. Dkt. 18, Ex. A at 41. The LMC is required discuss the concerns during a meeting at which the Program Director is present. *Id*. The LMC must then "make written advisory recommendations on ways to resolve the issues" and any responses to those recommendations are "presented to the [LMC] members in writing." *Id*. at 42. Following that process, the parties agreed that "*[f]inal* staffing decisions *shall* be made by the Program Director, in consultation with the Service Line VP" and that those decisions could not be challenged through arbitration. *Id*. Nothing about the process or the finality of the Program Director's decision is vague or ambiguous.[3] To the contrary, the LOU clearly establishes that (i) the method for addressing staffing-related disputes is the

---

[3] The Union accuses Sound of misrepresenting the contents of the LOU by stating that it established a process for "definitive[ly] settl[ing]" staffing disputes. Dkt. 19 at 13 n.7 (citing Dkt. 15 at 8:17-19). The quoted portion of Sound's statement—"definitive[ly] settl[ing]"—was meant as a reference to the passage from *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963) quoted on the previous page of Sound's motion (Dkt. 15 at 7:15-17), in which the court held that any "instrument for the *definitive settlement* of grievances" in a collective bargaining agreement is favored over litigation. The quote was not intended to suggest that the phrase "definitive[ly] settl[ing]" actually appears in the LOU—it does not. The point, however, was that the process set forth in the LOU is, in fact, "an instrument for the definitive settlement of grievances" related to staffing, meaning that the Union must raise its concerns through that process rather than litigation.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS (3:19-cv-05628-BHS-TLF) - 4
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

process set forth in the LOU and (ii) the decision arising from that process is "final."  And, to the extent there is ambiguity as to whether the procedure was intended to be exclusive, "[a]ny doubts about the exclusivity of contractual grievance procedures are to be resolved in favor of finding such procedures to be exclusive."  *Robeson v. U.S. Steel Corp.*, 2010 WL 1286602, at *3 (E.D. Mich. Mar. 31, 2010) (quotation marks and alterations omitted).

*Third*, the Union attempts to distinguish between "staffing," on the one hand, and "caseload" and "productivity" requirements, on the other, to argue that the Program Director only had authority to make final "staffing" decisions rather than decisions about "caseload" or "productivity" requirements.  The Union then argues that its claims do not concern "staffing," but instead involve "caseload" and "productivity" requirements.  Dkt. 19 at 14:20-15:10.  That semantic distinction does not withstand scrutiny.  The section of the LOU at issue is entitled "Staffing," and the terms "staffing," "caseload," and "productivity" are used interchangeably throughout the section.  Dkt. 18, Ex. A at 41-42.  Moreover, the Union's claim specifically concerns whether Sound acted in good faith in making "patient assignments," which, under any reasonable definition, falls within the ambit of "staffing decisions."  *See* Dkt. 18, ¶¶ 4.13-4.19.  And finally, Arbitrator Shapiro plainly understood the Union's claims as relating to staffing issues.  Dkt. 16, Ex. A at 3-4 (rejecting Union's argument that it could challenge whether Sound made a "'good faith' effort to adjust daily patient assignments" due to "the specificity and clarity of the LOU's stated process for addressing employee *staffing* concerns, in addition to the explicit exception . . . for *staffing issues* from the contractual grievance and arbitration process.").

Simply put, the Union agreed that the process outlined in the LOU, culminating in a "final" decision by the Program Director, would be the method for resolving staffing disputes.  Although the Union may now believe that process is inappropriate or unsatisfactory, it is nonetheless the process for which it bargained.  Thus, because the LOU established a method for resolving staffing disputes, the Union's current claim must be resolved through that process—not in this Court.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF) - 5
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### B. The Union Cannot Relitigate Arbitrator Shapiro's Ruling that the Union's Claims Are Subject to the Process Set Forth in the LOU.

The Union contends that the Court is not bound by Arbitrator Shapiro's ruling because (i) the issue at stake in the arbitration was allegedly different from the issue at stake here and (ii) Arbitrator Shapiro did not expressly rule on whether a federal court would have jurisdiction over the Union's claim. The Union is wrong on both accounts.

*First*, the Union voluntarily elected to submit the exact same staffing dispute at issue in this case to Arbitrator Shapiro through the CBA's general grievance and arbitration process. The claims the Union presented to Arbitrator Shapiro were identical to the claims it is pursuing here. Sound challenged Arbitrator Shapiro's jurisdiction, and the Union consented through its conduct to allow Arbitrator Shapiro to resolve the issue of substantive arbitrability. *Writers Guild of Am., W., Inc. v. Sweetpea Entm't Corp.*, 255 F. App'x 114, 115 (9th Cir. 2007) (unpublished) (where the parties had "fil[ed] a motion on the arbitrability issue, argu[ed] the issue in a hearing before the arbitrator, and then allow[ed] the arbitrator to rule on the issue, they had 'gone too far down the slippery slope in submitting its dispute to arbitration.'") (quoting *Orion Pictures Corp. v. Writers Guild of Am., West, Inc*., 946 F.2d 722, 725 (9th Cir. 1991)). Thus, the Union consented to Arbitrator Shapiro's authority to resolve all issues involving its staffing-related claim—the exact same claim it presses here.

In making her ruling, Arbitrator Shapiro reached conclusions that directly address the threshold jurisdictional issue here. Specifically, Arbitrator Shapiro held, in rejecting the Union's argument that its claim could be resolved through the CBA's general grievance and arbitration process, that the "specific[]" and "cl[ear]" LOU process was the appropriate avenue under the contract for "addressing employee staffing concerns." Dkt. 16, Ex. A at 4. That issue is precisely the same as the issue at stake here—that is, whether the parties agreed to an "instrument for the definitive settlement of grievances" concerning staffing-related issues. *Riss & Co.*, 372 U.S. at 519. The Union, therefore, is precluded from collaterally attacking that ruling here by arguing that the LOU process does not apply.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF) - 6
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Second*, it makes no difference that Arbitrator Shapiro's ruling did not expressly address the jurisdiction of federal courts over the Union's staffing-related claims. In order to determine whether the Court has subject matter jurisdiction over this lawsuit, it must determine whether the parties agreed to a separate process for resolving the Union's claim. Arbitrator Shapiro's ruling resolved that question and concluded that the LOU process is the mechanism for addressing staffing-related disputes. That conclusion was central to Arbitrator Shapiro's reasoning for *rejecting* the Union's argument that it had a "right to require, through arbitration, that Sound adhere to the agreed upon procedure including making a 'good faith' effort to adjust daily patient assignments based on the factors listed in the LOU." *Id*. at 3. That the Union has not sought to vacate or otherwise challenge that decision bears directly on this Court's jurisdiction. It cannot now indirectly challenge that ruling by arguing that the LOU process does not apply to the claims it is raising here.

Thus, Arbitrator Shapiro's ruling that the Union's staffing-related claim is subject to the process in the LOU is controlling here. And because that process establishes a method for final resolution of staffing-related disputes, the Court lacks jurisdiction to resolve the Union's staffing-related claims in this lawsuit. *Groves*, 498 U.S. at 173-74 (the presumption of access to the courts is "overcome whenever the parties have agreed upon a different method for the adjustment of their disputes").[4]

### III.   CONCLUSION

For the foregoing reasons, the Court should grant Sound's motion and dismiss the Union's First Amended Complaint with prejudice.

---

[4] Union notes that, under the specific facts in *Groves*, the Court found that the presumption of access to the courts had not been overcome. Dkt. 19 at 9 n.2. But the Court's specific ruling under the facts in *Groves* does not change the general proposition that a party may not pursue a judicial remedy when a collective bargaining agreement "specifies a different method for adjustment of their disputes." *Id*. And Groves was factually dissimilar, in that the alternative process specified in the collective bargaining agreement at issue was specifically described as "voluntary" and did not involve a mechanism for final dispute resolution. *Id*. at 170 & n.3.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF) - 7
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    DATED this 30th day of August, 2019.

2                                                                Davis Wright Tremaine LLP
                                                                 Attorneys for Defendant
3

4                                                                By: */s/Paula L. Lehmann*
                                                                     Paula L. Lehmann, WSBA #20678
5                                                                    N. Joseph Wonderly, WSBA #51925
                                                                     920 Fifth Avenue, Suite 3300
6                                                                    Seattle, WA  98104-1610
                                                                     Telephone: (206) 622-3150
7                                                                    Fax: (206) 757-7700
                                                                     E-mail: paulalehmann@dwt.com
8                                                                            joewonderly@dwt.com

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF) - 8
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August 2019, I electronically filed the foregoing Reply in Support of Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kristin Kussman, WSBA #30638
Amy Bowles, WSBA # 33541
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Ph:  (206) 623-0900
Fax: (206) 623-1432
Email: kkussmann@qwestoffice.net
         abowles@questoffice.net

DATED this 30th day of August, 2019.

*/s/ Jennifer Ronda*
Legal Secretary

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(3:19-cv-05628-BHS-TLF) - 9
4820-2055-4146v.1 0016924-000563

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax